United States District Court
Southern District of Texas
**ENTERED**
October 18, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 2:17-416-1** |
| | § | **CIVIL NO. 2:21-264** |
| **LAWRENCE JAMES ESPREE,** | § | |
| **Defendant/Movant.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant/Movant Lawrence James Espree's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 89), to which the United States of America (the "Government") has responded (D.E. 93). For the reasons stated herein, Movant's § 2255 motion is **DENIED**.

## I. BACKGROUND[1]

Movant met Alfonso Cuevas in late 2016. Cuevas was doing roofing work for Movant's girlfriend in San Antonio, Texas, but lived in the Rio Grande Valley. Movant and Cuevas worked and smoked marijuana and synthetic marijuana together, and after a while, Movant started to discuss the trafficking of methamphetamine. In late January of 2017, Movant and Cuevas tried to buy a kilogram of methamphetamine, but part of the drugs turned out to be fake. Movant also offered Cuevas guns and body armor in exchange for half a kilogram of methamphetamine, but this deal was never accomplished. On February 16, 2017, Movant, Cuevas, and four other men met at a small house located near

---

1. The following facts were taken from the testimony and other evidence admitted at Movant's bench trial. *See* 10/10/2019 Trial Tr., D.E. 80.

Mission, Texas, to smoke synthetic marijuana and discuss a drug deal. Movant had bought some methamphetamine and planned to have one of the men at the house smuggle it from the Rio Grande Valley to San Antonio by bus. This plan also failed, as the drugs were ultimately discovered on the bus.

A couple of days later, Movant hired Cuevas to smuggle methamphetamine to San Antonio. Cuevas agreed to the job, in exchange for Movant paying his phone bill and around $900. For the job, Movant's girlfriend bought Cuevas a bus ticket to San Antonio, and Movant sent the ticket to Cuevas through Facebook Messenger and confirmed the departure time. On February 21, 2017, Cuevas went to the same small house near Mission, where a man drove him to the bus station. In the car's backseat, the man helped Cuevas tape the drugs to his leg. They did this because the previous load that was discovered on the bus was "just in a bag and it didn't get through." Trial Tr. at 43:6-7. Cuevas then boarded the bus. Around 6:00 P.M., the bus arrived at the Falfurrias Border Patrol Checkpoint, where federal agents boarded the bus and conducted an immigration inspection. When questioned, Cuevas appeared nervous and was moving around. After receiving consent, an agent searched Cuevas, felt something on his thigh, and asked him to exit the bus. Cuevas was arrested after he admitted that he had crystal meth on his legs. Agents found the drugs, which contained around 877 grams of pure methamphetamine.

Agents interviewed Cuevas twice. During his first interview, Cuevas admitted that his friend "Lawrence" had hired him to take some drugs to San Antonio. For the job, Cuevas went to an address provided by "Lawrence," where another man "[gave] him the drugs . . . taped the drugs on his legs . . . [and] took him to the bus station." Trial Tr. at

24:5-10. During his second interview, Cuevas confirmed that his friend "Lawrence" was Movant Lawrence Espree and picked Movant and Movant's girlfriend out of photo lineups. Cuevas also consented to a search of his phone, which contained his Facebook communications with Movant, the bus ticket Movant sent him, and the photographs of guns and body armor from Movant.

Cuevas cooperated with the agents and made several recorded phone calls to Movant shortly after his arrest, purportedly from a McDonald's in Alice, Texas. Cuevas told Movant the following story: "Border Patrol had stopped the bus in Alice at the bus station and started checking passengers and [he] had gotten off the bus to get away so [he] wouldn't get discovered." Trial Tr. at 48:10-14. Movant asked whether Cuevas "still got the shit"—meaning the drugs strapped to his leg. *Id.* at 49:20-23. Movant also inquired if "it [was] crushed up or what"—voicing concern that the methamphetamine had been crushed into powder from Cuevas sitting on it. *Id.* at 52:16-20. Movant eventually stopped communicating and changed his phone number because he thought Cuevas had been arrested.

On July 12, 2017, Movant was charged with conspiracy to possess with intent to distribute more than 50 grams of methamphetamine. He waived his right to a jury trial and proceeded to a bench trial.

The bench trial lasted one day. The Government presented four witnesses: (1) DEA chemist Bradley Fleming; (2) Border Patrol Agent Jerry Rivera; (3) Cuevas; and (4) Homeland Security Special Agent David Muir. The Government submitted 23 exhibits, including the recorded phone calls between Cuevas and Movant, the bus ticket Movant

3

sent to Cuevas, relevant phone and Facebook records, the chemical analysis of the discovered drugs, and photographs of Movant, Cuevas, the discovered drugs, the guns and body armor, and the small house in Mission. At the close of the Government's case-in-chief, Movant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), which this Court denied. Movant presented five defense witnesses: (1) Regina Horne-Espree (Movant's stepmother), (2) Larry Espree (Movant's father), (3) Jed Allyn (who served with Cuevas in prison), (4) himself, and (5) Eleno Marroquin-Rodriguez (who allegedly overheard a conversation between Movant and Cuevas in jail, but pled the Fifth and refused to testify). Following the close of evidence, Movant renewed his motion for a judgment of acquittal under Rule 29(a), which this Court denied. The Court then heard closing arguments and took the case under advisement.

The following day, the Court issued an Order Following Bench Trial finding Movant guilty beyond a reasonable doubt of conspiracy to possess with intent to distribute more than 50 grams of methamphetamine. At sentencing, the Court granted defense counsel's motion for a downward variance and sentenced Movant to 200 months' imprisonment, to be followed by five years' supervised release.

On appeal, Movant challenged the Court's denial of his motion for judgment of acquittal, arguing that the Government failed to meet its burden to present substantial evidence of his identity during its case in chief. *United States v. Espree*, 832 F. App'x 337, 338 (5th Cir. 2020). The Fifth Circuit determined that "inference, circumstantial evidence, and connecting or corroborating facts and circumstances easily combine to prove that the person convicted, Lawrence James Espree, is the person who committed the crime charged

in the indictment." *Id.* "Our thorough review of the record establishes that the district court had ample basis for a rational inference that the Lawrence James Espree who was the defendant in the trial and who himself gave testimony is the Lawrence James Espree charged with conspiracy in the indictment and the person who committed that crime. . . . Indeed, it is difficult to fathom how a rational trier of fact could have inferred anything to the contrary." *Id.* The court further found that "the testimony of Alfonso Cuevas, a Government witness and unindicted co-conspirator, was alone sufficient to convict Espree." *Id.* The Fifth Circuit affirmed Movant's conviction on December 29, 2020.

Movant did not petition the Supreme Court for a writ of certiorari. He filed the present § 2255 motion on November 1, 2021. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant claims that defense counsel was constitutionally ineffective because he: (1) failed to adequately interview or prepare defense witnesses before trial; (2) failed to object to leading questions the Government asked Cuevas, its prime witness; (3) failed to challenge Cuevas' credibility; and (4) failed to challenge the agreement element of the conspiracy charge.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject

to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## IV. ANALYSIS

### A. Failure to Adequately Interview or Prepare Defense Witnesses

In Ground One of his motion, Movant alleges that trial counsel "failed to provide a modicum of preparation for trail [sic] appearances of my witnesses (Larry & Regina Espree, Jed Allyn)." D.E. 89, p. 4 (parenthetical in original). Movant states that counsel was "in touch with my witnesses very few times before my trail [sic]," which "falls far below reasonable standards of conduct for a defense attorney." *Id.* As a result of counsel's failure to prepare defense witnesses, the Government was able to overpower the judge with its side of the case, which inherently prejudiced Movant.

At trial, Horne-Espree testified that Movant's girlfriend used Horne-Espree's debit card to purchase a Greyhound bus ticket on February 21, 2017. Larry Espree testified that Movant's girlfriend had exclusive control over the debit card used to purchase the Greyhound bus ticket. Allyn testified that, in prison, Cuevas said he would "'throw anybody under the bus I need to to get more time off my sentence'" and that Movant was "'easy to take a fall'". Trial Tr. at 148:9-19. Defense counsel called these witnesses at trial to exculpate Movant and implicate Movant's girlfriend and/or Cuevas, and the witnesses provided testimony to that effect. Movant does not identify, much less prove, what

additional testimony counsel would have obtained through further interviews or preparation of these witnesses.

Movant's conclusory allegation that his counsel failed to adequately interview or prepare defense witnesses for trial is insufficient to show counsel was ineffective. His claim in Ground One is denied.

### B. Failure to Object to Leading Questions

In Ground Two, Movant complains that counsel "failed to object to the many grossly leading questions" the Government asked Cuevas. D.E. 89, p. 5. "Failure to object to leading questions can cause prejudice!" *Id.* Movant does not provide any facts to support his claim, nor does he identify any of the "many grossly leading questions" that the Government allegedly asked Cuevas, to which counsel should have objected.

Movant's conclusory allegation that his counsel failed to object to unidentified leading questions is insufficient to show counsel was ineffective. His claim in Ground Two is denied.

### C. Failure to Challenge Cuevas' Credibility

Movant claims in Ground Three that counsel failed to challenge the credibility of Cuevas, the Government's prime witness. According to Movant, Cuevas stated in his first post-arrest interview that he went to the small house, where someone taped drugs to his legs and then drove him to a bus station. Later in the investigation, however, Cuevas stated that he went to the house, where a man drove him to a bus station and then helped him tape drugs to his legs in the backseat of the car. Movant maintains that, had counsel challenged

Cuevas' credibility regarding his two contradictory stories, it would have "destroyed the Government's case." D.E. 89, p. 7.

The first statement Movant describes is from Agent Rivera's direct testimony at trial about his checkpoint interview of Cuevas regarding obtaining and transporting the drugs.[2] The second statement Movant describes is from Cuevas' direct testimony at trial.[3] Both men describe the same facts: After Cuevas went to a residential address, the same person who helped tape the drugs to Cuevas' leg also took him to the bus station. Because there was no contradiction between the witnesses' tesimony, any challenge to Cuevas's credibility on this ground would have been frivolous. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot

---

2. [AUSA]: What happened after you found the drugs on Alfonso Cuevas? [Agent Rivera]: Well, like I said, I put him under arrest, put him inside the checkpoint, you know, started my interview. . . . Mr. Lawrence, you know, gave him an address. So he – then he said that he went to that address and this other person was one [to] give him the drugs and put the – taped the drugs on his legs. And he said that that same person was the one who took him to the bus station.

Trial Tr. at 23:25–24:10.

3. [AUSA]: Okay. And what'd you do when you got to that address? [Cuevas]: I met the guy there and he took me to the bus station. When we got to the bus station, we got in the backseat and he strapped them to my leg.

. . .

Q: Did you know how you were going to carry it? Did you think it was going to be in a bag, did you have any idea –
A: Yeah, he had a –
Q: – how you were going to –
A: – like HEB bag with him and he put it on the backseat. When we got to the bus station, he – we both got in the back and he helped me strap it to my legs.

. . .

Q: Okay, so what happened at that point?
A: Well, we got to the bus station and I strapped – I got in the bus. I was there for like five minutes. I got in the bus.

Trial Tr. at 42:8–43:11.

form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Moreover, defense counsel subjected Agent Rivera and Cuevas to cross-examination on these facts, and Movant fails to explain what further cross-examination would have elicited or how it would have changed this Court's verdict. *See Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009) (habeas petitioner must "offer a concrete explanation of the testimony that alleged proper cross-examination would have elicited") (citing *United States v. Irby*, 103 F.3d 126 (5th Cir. 1996) (unpublished) (denying ineffective assistance claim based on counsel's failure "to adequately cross-examine a number of government witnesses" because petitioner "fail[ed] to set forth . . . the possible impact of any additional cross-examination"); *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence)).

The Court finds Movant has failed to show that counsel was ineffective for failing to adequately challenge Cuevas' credibility a trial. His claim in Ground Three is denied.

### D. Failure to Challenge the Agreement Element of the Conspiracy Charge

Finally, Ground Four alleges that counsel "never challenged the agreement element" of the conspiracy charge. D.E. 89, p. 8. "Other than the word of Alfonso Cuevas there was nothing to prove a[n] agreement. There was no text message or recording that proves I was going to pay him anything . . . You cannot be convicted off of a co-conspirator's word. You must have corroborating evidence other th[a]n the co-conspirator's word." *Id.*

As an initial matter, counsel did challenge the agreement element of the conspiracy charge. During his closing argument, counsel argued that Movant and Cuevas never agreed to transport or distribute methamphetamines:

> [Movant] knows Mr. Cuevas from work. They smoked a lot of dope together. They admitted it. He admitted it – Mr. Cuevas. Mr. Espree admitted it. But they've never agreed to transport or distribute methamphetamines. Mr. Cuevas has said several times that he'll do anything to get his time cut and he already has.

Trial Tr. at 212:2-7. Defense counsel also moved for a judgment of acquittal under Rule 29(a) at the close of the Government's case-in-chief and at the close of evidence.

Moreover, as noted above, the Government submitted 23 exhibits at trial, including the recorded phone calls between Movant and Cuevas, the bus ticket Movant sent to Cuevas, relevant phone and Facebook records, the chemical analysis of the discovered drugs, and photographs of Movant, Cuevas, the discovered drugs, the guns and body armor, and the small house. Movant was not convicted on Cuevas' word alone; however, even if he had been, the Fifth Circuit previously found that Cuevas's testimony "was alone sufficient to convict [Movant]." *Espree*, 832 F. App'x at 338 (citing *United States v. Valdez*, 453 F.3d 252, 257 (5th Cir. 2006); *United States v. Solis*, 299 F.3d 420, 445 (5th Cir. 2002)). Movant's claim that counsel was ineffective for allowing him to "be convicted off of a co-conspirator's word" is therefore without merit.

The Court finds Movant has failed to show that counsel was ineffective for failing to challenge the agreement element of the conspiracy charge. His claim in Ground Four is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion under 28 U.S.C. § 2255 (D.E. 89) is

**DENIED**, and he is **DENIED** a Certificate of Appealability.

**ORDERED** _10/17/22_____.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE